**FILED**

MAR  8 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HOLY LAND FOUNDATION FOR<br>RELIEF AND DEVELOPMENT<br>Last Address:<br>525 International Parkway<br>Richardson, Texas  75081 | )<br>)<br>) |
| Plaintiff, | |
| v. | |
| JOHN ASHCROFT, in his official<br>capacity as Attorney General of<br>the United States; THE UNITED<br>STATES DEPARTMENT OF JUSTICE; PAUL<br>H. O'NEILL, in his official<br>capacity as Secretary of the<br>Treasury of the United States;<br>THE UNITED STATES DEPARTMENT OF<br>THE TREASURY; COLIN L. POWELL,<br>in his official capacity as<br>Secretary of State of the United<br>States; and THE UNITED STATES<br>DEPARTMENT OF STATE, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

CASE NUMBER  1:02CV00442

JUDGE: Gladys Kessler

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 03/08/2002

COMPLAINT OF THE HOLY LAND FOUNDATION
FOR RELIEF AND DEVELOPMENT
FOR DECLARATORY AND INJUNCTIVE RELIEF

INTRODUCTION

1.  The Holy Land Foundation for Relief and Development ("Holy Land") brings this action under the United States Constitution, the Religious Freedom Restoration Act ("RFRA"), the International Emergency Economic Powers Act ("IEEPA"), and the Administrative Procedure Act ("APA").  Holy Land asks the Court to declare unlawful and enjoin defendants' designation of Holy Land as a specially designated terrorist ("SDT") and as a specially designated global terrorist ("SDGT") and their seizure of Holy Land's assets on December 4, 2001.

2.    Defendants designated Holy Land and seized Holy Land's assets, including millions of dollars of charitable donations, without notice, without a hearing, without a warrant, without probable cause, without statutory authority, and without any rational basis.  The designation of Holy Land and the seizure of Holy Land's assets, under a "blocking notice" issued by the Office of Foreign Assets Control ("OFAC"), an entity within the United States Department of the Treasury, violated Holy Land's rights under the First, Fourth, and Fifth Amendments to the Constitution; violated the rights of Holy Land, its donors, and its employees under RFRA; exceeded the authority granted to the President (and delegated by him to the defendants) under the IEEPA; and constituted arbitrary and capricious agency action under the APA.

### JURISDICTION

3.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(2).

### VENUE

4.    Venue is proper in this district under 28 U.S.C. § 1391(e), because the defendants reside here.

### PARTIES

5.    Holy Land is an American foundation that has worked to foster peace and that opposes terrorism in any form. It is a non-profit charitable corporation organized in 1989 under the laws of California and with its principal place of business in Richardson, Texas.  Holy Land is a tax-exempt organization

under § 501(c)(3) of the Internal Revenue Code.  It derives its revenue from charitable, tax-deductible donations from individuals and institutions.  Most donors to Holy Land are Muslims who give in accordance with, and as required by, their religious beliefs.

6.    Until the seizure of its assets on December 4, 2001, Holy Land provided charitable and humanitarian aid to refugees, orphans, victims of human and natural disasters, and other poor and needy persons and entities throughout the world, without regard to faith or political affiliation.  Among its other charitable and humanitarian work, Holy Land has organized aid to victims of the September 11, 2001 terrorist attacks; it has provided assistance to victims and relief workers at the Oklahoma City bombing site; to victims of flooding in Oklahoma and Iowa; to victims of riots in Los Angeles; to tornado victims in Fort Worth; to the needy in Patterson, New Jersey; to earthquake victims in Turkey and India; to victims of the Bosnian and Kosovo conflicts; to victims of the conflict in Chechnya; to victims of flooding in Mozambique; and to refugees, orphans, and other persons and families in need in the West Bank, Gaza, Lebanon, and Jordan.

7.    Holy Land has often undertaken its charitable and humanitarian work in conjunction with governmental and non-governmental international relief organizations, including the International Red Cross, the International Red Crescent, the United Nations High Commission for Refugees, the United Nations

World Food Program, the North Atlantic Treaty Organization, the Royal Dutch Army, the Government of Turkey, the Salvation Army, the United Nations Relief and Works Agency for Palestinian Refugees in the Near East, and the United Nations International Children's Emergency Fund.

8.    Holy Land has never donated funds or provided services to Hamas or any other designated "foreign terrorist organization" ("FTO"), SDT, or SDGT.  Holy Land has never donated funds or provided services for the purpose of supporting Hamas or any other designated FTO, SDT, or SDGT.  Holy Land donates funds and provides services primarily to victims of man-made and natural disasters, based on need, without regard to faith or political beliefs or affiliations.

9.    Neither Hamas nor any other designated FTO, SDT, or SDGT controls or has an interest in Holy Land.  Neither Hamas nor any other designated FTO, SDT, or SDGT controls or has an interest in any of Holy Land's assets, including the blocked assets at issue in this case.  No foreign person controls or has an interest in any of Holy Land's assets, including the blocked assets in this case, except for approximately $225,000 owed to foreign vendors for services and supplies provided to Holy Land for humanitarian use before the OFAC blocking notice was issued on December 4, 2001.

10.    Defendant John Ashcroft ("Ashcroft") is the Attorney General of the United States and the highest official in

4

the United States Department of Justice.  He is sued in his official capacity.

11.  Defendant United States Department of Justice ("DOJ") is the principal law enforcement agency of the United States government.  The DOJ includes the Federal Bureau of Investigation ("FBI").  The President has delegated to the DOJ certain aspects of his authority under the IEEPA, 50 U.S.C. §§ 1701-1707.

12.  Defendant Paul H. O'Neill ("O'Neill") is the Secretary of the Treasury of the United States.  He is sued in his official capacity.

13.  Defendant United States Department of the Treasury ("DOT") is an agency to which the President has delegated certain aspects of his authority under the IEEPA.  OFAC is an office within the DOT.

14.  Defendant Colin L. Powell ("Powell") is the Secretary of State of the United States.  He is sued in his official capacity.

15.  Defendant United States Department of State ("DOS") is an agency to which the President has delegated certain aspects of his authority under the IEEPA.

### ALLEGATIONS COMMON TO ALL COUNTS

16.  Almost from the beginning of Holy Land's existence, the Government of Israel ("GOI") and its allies have alleged falsely that Holy Land provided funds and other assistance to Hamas.  To counter these false allegations, Holy

Land representatives repeatedly have sought meetings with the defendant agencies.  In most instances, defendants ignored these requests.  When meetings did occur, representatives of the defendant agencies expressed no concerns about Holy Land's operations.  At all times, Holy Land has offered to, and has been prepared to, make available every aspect of its operations for review by the defendant agencies.

17.  On September 23, 2001, in response to the tragic events of September 11, President George W. Bush issued Executive Order 13224.  The Executive Order purports to rest in part on the President's authority under the IEEPA.  The Order blocked the United States assets of certain "foreign persons."  In addition, the Order delegated to the Secretaries of State and Treasury and to the Attorney General the authority to designate certain other persons whose assets would be blocked, including:

> (c)  persons determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, to be owned or controlled by, or to act for or on behalf of those persons listed in the Annex to this order . . . .
>
> (d)  [with exceptions not relevant here] and after such consultation, if any, with foreign authorities as the Secretary of State, in consultation with the Secretary of Treasury and the Attorney General, deems appropriate in the exercise of his discretion, persons determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General;
>
> (i)  to assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorism or those

persons listed in the Annex to this order or
determined to be subject to this order; or

(ii) to be otherwise associated with
those persons listed in the Annex to this
order or those persons determined to be
subject to [other subsections] of this order.

18.  On information and belief, on or about October 31,
2001, defendants designated Hamas as an SDGT, thus making Hamas
subject to Executive Order 13224.  President Bill Clinton had
previously designated Hamas as an SDT on January 23, 1995 in
Executive Order 12947.  Secretary of State Madeleine K. Albright
designated Hamas as an FTO on October 8, 1997.  On information
and belief, before President Clinton issued Executive Order
12947, no officer or agency of the United States government had
designated Hamas as an FTO, SDT, or an SDGT, and no United States
law prohibited United States persons from associating with or
providing support to Hamas.

19.  On or about December 3, 2001, under the purported
authority of Executive Order 13224, Executive Order 12947, and
the IEEPA, defendants designated Holy Land as an SDT and an SDGT.
On December 4, 2001, pursuant to this designation, OFAC issued a
blocking notice with respect to Holy Land's assets.  A copy of
the blocking notice is attached as Exhibit A.

20.  On December 4, 2001, under the purported authority
of the OFAC blocking notice, representatives of the DOT and the
FBI seized Holy Land's assets, including its bank accounts and
all of its physical assets.  The OFAC blocking notice provides in
part:

7

[A]ll real and personal property of Holy
Land, including but not limited to all
offices, furnishings, equipment and vehicles,
as well as all funds and accounts in which
Holy Land has any interest, are blocked.  All
assets of Holy Land, including but not
limited to bank, charge and investment
accounts, securities, and safe deposit boxes
at any financial institution located in the
United States or organized under the laws of
the United States, including their overseas
branches, are blocked.  Blocked property may
not be transferred, withdrawn, exported,
paid, or otherwise dealt in without prior
authorization from OFAC.

All transactions involving property in
which Holy Land has any interest, including
any property of third parties in the
possession or control of Holy Land, are
prohibited without specific authorization
from OFAC.  As a consequence of this action,
activities in, use of, and occupation of Holy
Land offices, including [the Richardson]
facility and each Holy Land office subject to
United States jurisdiction, are hereby
prohibited. . . .  No property may be removed
from the premises other than property that is
clearly the personal property of the
individual requesting to remove the property
from the premises.

The blocking notice adds that any willful violation of the notice
is punishable by criminal and civil penalties.

21.  Among other actions, on December 4, 2001,
representatives of the DOT and the FBI seized and removed from
the Holy Land headquarters in Richardson, Texas all documents,
computers, furniture, audiovisual equipment, and other items.
The seized items remain in a warehouse in the custody of
representatives of the defendant agencies.  In addition,
representatives of the DOT and the FBI closed Holy Land's offices
in Illinois, California, and New Jersey, seizing all items from

the Illinois and California offices and a number of items from
the New Jersey office.

22.    Also on December 4, 2001, defendants seized Holy
Land's bank accounts and funds in the United States.  At the time
of the seizures, those accounts contained millions of dollars
that Muslims throughout the United States, including many Muslim
citizens of this country, had contributed for charitable purposes
in the exercise of their religion.  Because the seizures occurred
during the holy month of Ramadan, religious contributions to Holy
Land had been particularly heavy in the period immediately
preceding the seizures.

23.    The funds seized on December 4, 2001 included
funds in the client trust account of a law firm representing Holy
Land in an unrelated matter.  That trust account is located in
the District of Columbia.

24.    On information and belief, the seizures of Holy
Land assets described in the preceding paragraphs occurred solely
under the purported authority of the OFAC blocking notice.
Defendants did not obtain a judicial warrant before seizing Holy
Land assets.  No court approved the seizures in advance.

25.    Defendants did not provide Holy Land with notice
of their intent to seize Holy Land's assets before the seizures
occurred.  Defendants did not provide Holy Land with an
opportunity to be heard before the seizures occurred.  Defendants
did not provide Holy Land with a prompt post-seizure hearing at

which Holy Land would have an opportunity to contest the legal and factual basis for the seizures.

26.   In January 2002, OFAC issued HLF a license authorizing it to pay undersigned counsel attorneys fees and expenses incurred in litigation and other matters related to the December 4, 2001 blocking notice.  A copy of the license is attached as Exhibit B.

27.   On information and belief, the designation of Holy Land as an SDT and SDGT under Executive Orders 12947 and 13224 is based on information set forth in a memorandum dated November 5, 2001 from Dale L. Watson, Assistant Director of the Counterterrorism Division of the FBI, to R. Richard Newcomb, Director of OFAC ("the Watson memorandum").  The Watson memorandum asserts that "[Holy Land] is the primary fund-raising entity for HAMAS and that a significant portion of the funds raised by [Holy Land] are clearly being used by the HAMAS organization."  The purported "evidence" set forth in the Watson memorandum either is false or, if true, does not support this assertion.

28.   The Watson memorandum relies in part on alleged meetings, conversations, statements, and transactions that occurred before January 23, 1995, the date on which President Clinton first designated Hamas as an SDT.  At the time of the alleged meetings, conversations, statements, and transactions, the conduct at issue, if it occurred, was entirely lawful.

29.   The Watson memorandum relies in part on so-called "interviews" of alleged Hamas members conducted by the GOI and the Israeli Police ("IP").  On information and belief, these "interviews" involved physical and psychological torture and other forms of extreme physical and psychological coercion and are unreliable for that reason.  On information and belief, defendants knew as of December 4, 2001 that the GOI/IP "interviews" of alleged Hamas members on which the Watson memorandum relies involved physical and psychological torture and other forms of extreme physical and psychological coercion.

30.   The Watson memorandum relies in part on information allegedly provided by the GOI, without stating the basis, source, or reliability of that information.  In light of the GOI's stated desire to eliminate Holy Land and its questionable means of gathering information, including torture, this information cannot be considered reliable.  On information and belief, defendants knew as of December 4, 2001 that the information provided by the GOI could not be considered reliable for these and other reasons.

31.   The Watson memorandum purports to rely in part on documents allegedly seized by the GOI during a search of an alleged Holy Land office in Jerusalem on May 7, 1995.  On information and belief, the GOI deliberately provided only a portion of the seized documents to defendants, and prepared misleading analyses of other documents, to produce a false picture of Holy Land's operations.  On information and belief, as

11

of December 4, 2001 defendants knew that the GOI deliberately provided only a portion of the seized documents to defendants, and prepared misleading analyses of other documents, to produce a false picture of Holy Land's operations.

32.  The Watson memorandum relies in part on unnamed FBI informants.  As to one such unnamed informant, the memorandum states that he has provided "both reliable and unreliable information in the past."  As to the other such unnamed informants, the Watson memorandum asserts that they "have been found to be reliable in the past," without providing any factual basis from which to assess that assertion.  On information and belief, the information allegedly provided by the informants is false and/or misleading.

33.  The Watson memorandum relies in part on hearsay statements (often involving multiple levels of hearsay), from newspapers, magazines, books, and other secondary sources.  On information and belief, this multiple hearsay is in many instances inaccurate.

34.  The Watson memorandum relies in part on so-called "FBI analysis," without indicating the factual basis or rationale underlying the "analysis."  On information and belief, the FBI analysis on which the Watson memorandum relies is erroneous and inaccurate.

35.  As a direct result of the seizures and the other restrictions set forth in the OFAC blocking notice, Holy Land cannot carry out its charitable and humanitarian activities in

this country or abroad.  As a consequence, orphans and other
needy persons and entities have been left without food, medicine,
and other necessary humanitarian aid.

36.  As a direct result of the seizures and the other
restrictions set forth in the OFAC blocking notice, Holy Land
cannot fulfill the religious and charitable intentions of its
donors.

### COUNT ONE--PROCEDURAL DUE PROCESS
### (All Defendants)

37.  Paragraphs 1 through 36 above are incorporated in
this count by reference.

38.  By designating Holy Land as an SDT and an SDGT and
seizing Holy Land's assets, defendants deprived Holy Land of its
property.

39.  By depriving Holy Land of its property without
prior notice and a hearing, defendants violated Holy Land's right
to procedural due process under the Fifth Amendment to the United
States Constitution.

40.  By depriving Holy Land of its property without a
prompt post-deprivation hearing, defendants violated Holy Land's
right to procedural due process under the Fifth Amendment to the
United States Constitution.

### COUNT TWO--SUBSTANTIVE DUE PROCESS
### (All Defendants)

41.  Paragraphs 1 through 40 are incorporated in this
count by reference.

42.  By designating Holy Land as an SDT and an SDGT and seizing Holy Land's assets, defendants acted arbitrarily and capriciously, in violation of Holy Land's right to substantive due process under the Fifth Amendment to the United States Constitution.

### COUNT THREE--FIFTH AMENDMENT TAKINGS CLAUSE
### (All Defendants)

43.  Paragraphs 1 through 42 are incorporated in this count by reference.

44.  Defendants' designation of Holy Land as an SDT and an SDGT and their seizures of Holy Land's assets constitute takings of Holy Land's property without just compensation, in violation of the takings clause of the Fifth Amendment to the United States Constitution.

### COUNT FOUR--FOURTH AMENDMENT
### (Defendants Ashcroft, DOJ, O'Neill, and DOT)

45.  Paragraphs 1 through 44 are incorporated in this count by reference.

46.  Defendants Ashcroft, DOJ, O'Neill, and DOT, through their agents, searched Holy Land's premises and seized Holy Land's assets without a warrant and without probable cause, in violation of the Fourth Amendment to the United States Constitution.

### COUNT FIVE--FIRST AMENDMENT FREEDOM
### OF SPEECH AND ASSOCIATION
### (All Defendants)

47.  Paragraphs 1 through 46 are incorporated in this count by reference.

48.   Holy Land does not have a knowing affiliation with Hamas or any other organization or person possessing unlawful aims and goals.  Holy Land does not have a specific intent to further the illegal aims of Hamas or any other organization or person possessing unlawful aims and goals.

49.   By designating Holy Land as an SDT and an SDGT and by seizing Holy Land's assets, defendants substantially interfered with the rights of Holy Land to freedom of speech and freedom of association under the First Amendment to the United States Constitution.

50.   The substantial interference with the rights of Holy Land to freedom of speech and freedom of association does not serve a compelling governmental interest.

51.   Designating Holy Land as an SDT and an SDGT and seizing its assets is not the least restrictive means of accomplishing any compelling governmental interest.

### COUNT SIX--FIRST AMENDMENT FREE EXERCISE OF RELIGION
### (All Defendants)

52.   Paragraphs 1 through 51 are incorporated in this count by reference.

53.   Holy Land and its Muslim donors and employees support and participate in Holy Land's work because it fulfills their religious obligations as Muslims to engage in zakat (anonymous humanitarian charitable giving).  Zakat is one of the Five Pillars (fundamental tenets) of the Muslim religion.

54.   By designating Holy Land as an SDT and an SDGT and by seizing Holy Land's assets, defendants have substantially

burdened the exercise of religion by Holy Land and its Muslim donors and employees.

56.   The substantial burden that the designation of Holy Land and the seizure of its assets has placed on the exercise of religion by Holy Land and its Muslim donors and employees does not further any compelling governmental interest.

56.   The substantial burden that the designation of Holy Land and the seizure of its assets has placed on the exercise of religion by Holy Land and its Muslim donors and employees is not the least restrictive means of furthering any compelling governmental interest.

### COUNT SEVEN--RELIGIOUS FREEDOM RESTORATION ACT, 42 U.S.C. §§ 2000bb to 2000bb-4 (All Defendants)

57.   Paragraphs 1 through 56 are incorporated in this count by reference.

58.   Muslim donors' and employees' contributions to Holy Land in accordance with the Muslim tenet of zakat, and Holy Land's use of those donations for charitable and humanitarian purposes, constitute the "exercise of religion" under 42 U.S.C. §§ 2000bb-2(4), 2000cc-5.

59.   By designating Holy Land as an SDT and an SDGT and by seizing Holy Land's assets, defendants have substantially burdened the exercise of religion by Holy Land and its Muslim donors and employees.

60.   The substantial burden that the designation of Holy Land and the seizure of its assets has placed on the

exercise of religion by Holy Land and its Muslim donors and employees does not further any compelling governmental interest.

61.   The substantial burden that the designation of Holy Land and the seizure of its assets has placed on the exercise of religion by Holy Land and its Muslim donors and employees is not the least restrictive means of furthering any compelling governmental interest.

## COUNT EIGHT--ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706 (All Defendants)

62.   Paragraphs 1 through 61 are incorporated in this count by reference.

63.   Defendants' designation of Holy Land as an SDT and an SDGT and their seizures of Holy Land's assets constitute "final agency action" under 5 U.S.C. § 704.

64.   Defendants' designation of Holy Land as an SDT and an SDGT and their seizures of Holy Land's assets are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

65.   Defendants' designation of Holy Land as an SDT and an SDGT and their seizures of Holy Land's assets are contrary to constitutional right, power, privilege, or immunity.  5 U.S.C. § 706(2)(B).

66.   Defendants' designation of Holy Land as an SDT and an SDGT and their seizures of Holy Land's assets are in excess of their statutory authority under the IEEPA, see 5 U.S.C. § 706(2)(C), because no foreign country or any national thereof has

17

any interest in the blocked assets, 50 U.S.C. § 1702(a)(1)(B),
with the exception of approximately $225,000 owed to foreign
vendors for services and supplies provided to Holy Land for
humanitarian use before the blocking notice was issued on
December 4, 2001.

     67.   Defendants' designation of Holy Land as an SDT and
an SDGT and their seizures of Holy Land's assets were done
without observance of procedure established by law.  5 U.S.C. §
706(2)(D).

     68.   Defendants' designation of Holy Land as an SDT and
an SDGT and their seizures of Holy Land's assets are unwarranted
by the facts.  5 U.S.C. § 706(2)(F).

     WHEREFORE, Holy Land requests that the Court grant the
following relief:

     A.   A declaration under 28 U.S.C. § 2201 that
defendants' designation of Holy Land as an SDT and an SDGT and
their seizures of Holy Land's assets on December 4, 2001 violated
Holy Land's rights under the First, Fourth, and Fifth Amendments,
RFRA, the IEEPA, and the APA, and the rights of Holy Land's
Muslim donors and employees under the First Amendment and RFRA.

     B.   An injunction restraining defendants from
continuing to block or otherwise interfere with Holy Land's
access to and disposition of its assets.

     C.   Payment of Holy Land's attorney's fees and
expenses incurred in this matter under 28 U.S.C. § 2412 and any
other applicable provision of law.

D.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

FREEDMAN BOYD DANIELS HOLLANDER
GOLDBERG & CLINE P.A.

By: _____
John D. Cline
(D.C. Bar No. 403824)
John W. Boyd
Nancy Hollander
Zachary A. Ives

20 First Plaza, Suite 700
Albuquerque, NM 87125
(505) 842-9960 (phone)
(505) 842-0761 (fax)

Counsel for the Holy Land
Foundation for Relief
and Development

19



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

<u>BLOCKING NOTICE</u>                    DEC - 4 2001

FAC No. SDGT-197443

Holy Land Foundation for Relief and Development
525 International Parkway
Richardson, Texas 75081

Gentlemen:

You are hereby notified that Holy Land Foundation for Relief and
Development ("Holy Land") has been designated pursuant to
Presidential Executive Orders No. 13224 (66FR49079), issued on
September 23, 2001, and No. 12947, issued on January 23, 1995
(60FR5079) (the "Orders"), and under the authorities granted by
the International Emergency Economic Powers Act, 50 U.S.C. §§
1701-06 ("IEEPA").

This notice is also to inform you that pursuant to the Orders,
all real and personal property of Holy Land, including but not
limited to all offices, furnishings, equipment and vehicles, as
well as all funds and accounts in which Holy Land has any
interest, are blocked.  All assets of Holy Land, including but
not limited to bank, charge and investment accounts, securities,
and safe deposit boxes at any financial institution located in
the United States or organized under the laws of the United
States, including their overseas branches, are blocked.  Blocked
property may not be transferred, withdrawn, exported, paid, or
otherwise dealt in without prior authorization from OFAC.

All transactions involving property in which Holy Land has any
interest, including any property of third parties in the
possession or control of Holy Land, are prohibited without
specific authorization from OFAC.  As a consequence of this
action, activities in, use of, and occupation of Holy Land
offices, including this facility and each Holy Land office
subject to United States jurisdiction, are hereby prohibited.
All persons on these premises are directed to terminate all
activities for or on behalf of Holy Land, and to leave the **FILED**
premises.  No property may be removed from the premises other
than property that is clearly the personal property of the MAR  8 2002
individual requesting to remove such property from the premises.
Persons who are unable to remove their personal belongings at
this time must contact OFAC in writing at the following address
to make arrangements to secure their belongings at a later date:
U.S. Department of the Treasury, Office of Foreign Assets

EXHIBIT

A

2

Control, Attn:  Chief of Enforcement, 1500 Pennsylvania Avenue, N.W. (Annex), Washington, D.C. 20220.  Letters may be sent via facsimile to (202) 622-1657.  Requests for specific licenses for payment of outstanding financial obligations owed by Holy Land, such as salary, rent and utility payments, among others, must also be made in writing to the above address.

Willful violations of IEEPA and of licenses and orders issued thereunder, including this Blocking Notice, are punishable by criminal penalties ranging up to 10 years in prison and/or fines up to $500,000 for corporations and up to $250,000 for individuals.  Civil penalties of up to $11,000 per count may be imposed by OFAC.

Should you wish to seek a license to engage in any transaction involving blocked property, please refer to the licensing procedures set forth in §§ 501.801-802 of the Reporting and Procedures Regulations, 31 C.F.R. Part 501, (the "Reporting Regulations").

If it is believed that this designation is in error and Holy Land wishes to challenge it, a letter should be sent to the attention of the Director at the address indicated above.  For further information, please refer to § 501.807 of the Reporting Regulations.

If you have any questions concerning this notification, please contact OFAC Chief of Enforcement at (202) 622-2430.

Sincerely,

R. Richard Newcomb
Director
Office of Foreign Assets Control

Served by OFAC Enforcement Officer _____ on the _____ day of December, 2001.

_____    _____
(Signature of Recipient)    (Printed Name and Title of Recipient)

Witnessed by:_____



# DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220    LICENSE No. SDGT-22

### LICENSE

(Granted under the authority of 50 U.S.C. §§ 1701 *et seq.*, 22 U.S.C. § 287c, Executive Order 13224, and 31 C.F.R. Part 501.)

**To: Freedman Boyd Daniels Hollander**    **Akin, Gump, Strauss, Hauer & Feld, L.L.P.**
    **Goldberg & Cline P.A.**    **c/o Wynn H. Segall, Esq.**
    **c/o John D. Cline, Esq.**    **1333 New Hampshire Avenue, NW**
    **20 First Plaza, Suite 700**    **Suite 400**
    **Albuquerque, NM 87102**    **Washington, DC 20036**

    **(Collectively, the "Licensees")**

**1.** Based on the letter of January 9, 2002 from the Firm of Freedman Boyd Daniels Hollander Goldberg & Cline, P.A., on behalf of Holy Land Foundation (the "Application"), the transactions and activities delineated on the reverse hereof are hereby authorized.

**2.** This License is granted upon the statements and representations made in the Application, or otherwise filed with or made to the Treasury Department as a supplement to the Application, and is subject to the conditions, among others, that the Licensees comply in all respects with all regulations, rulings, orders and instructions issued by the Secretary of the Treasury under the authority of the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 *et seq.*), the National Emergencies Act (50 U.S.C. §§ 1601 *et seq.*), section 5 of the United Nations Participation Act of 1945, as amended (22 U.S.C. § 287c), section 301 of title 3 of the United States Code, Executive Order 13224 of September 23, 2001, and the terms of this License.

**3.** The Licensees shall furnish and make available for inspection any relevant information, records, or reports requested by the Secretary of the Treasury, or any other duly authorized officer or agency.

**4.** This License **expires on January 31, 2003,** is not transferable, and is subject to the provisions of Executive Order 13224 of September 23, 2001, 31 C.F.R. Part 501, and any regulations and rulings issued pursuant thereto. This License may be revoked or modified at any time at the discretion of the Secretary of the Treasury.

**5.** This License does not excuse compliance with any law or regulation administered by the Office of Foreign Assets Control or another agency (including reporting requirements) applicable to the transactions herein licensed, nor does it release Licensees or third parties from civil or criminal liability for violation of any law or regulation.

    Issued by direction and on behalf of the Secretary of the Treasury:

        OFFICE OF FOREIGN ASSETS CONTROL

        By _____   FILED 1/24/02
            /R. Richard Newcomb    MAR 8 2002
            **Director**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Attention is directed to 18 U.S.C. § 1001 and 50 U.S.C. § 1705 for provisions relating to penalties.

EXHIBIT

B

RECEIVED

FEB 0 4 2002

FREEDMAN, BOYD & DANIELS
Attorneys at Law

**LICENSE No. SDGT-22**                                              **Page 2 of 2**

**SECTION I - LICENSEES:** The Firm of Freedman Boyd Daniels Hollander Goldberg & Cline, P.A. (the "Firm") is hereby authorized to receive legal fees and reimbursement of expenses from **Holy Land Foundation ("HLF")** in connection with the Firm's representation of HLF before the Treasury Department's Office of Foreign Assets Control ("OFAC"), and other U.S. government agencies and/or courts, regarding OFAC's designation of HLF as a Specially Designated Global Terrorist organization and with HLF's efforts to obtain the release of assets blocked at the direction of OFAC.

**SECTION II - AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.:** Akin, Gump, Strauss, Hauer & Feld, L.L.P. is hereby authorized to release up to **$100,000** of blocked funds held in the Akin, Gump, Strauss, Hauer & Feld, L.L.P. trust account held at Citibank, in the name of HLF, and to transfer such amount to a blocked trust account at Wells Fargo Bank, 6400 Uptown Boulevard, NE, Albuquerque, NM, in the name of the Firm **(Trust Account No. 262-0100744)** in connection with the legal services described in **SECTION I**, above.

**SECTION III - WARNING: (a)** Except as authorized in **Section II**, above, this License does not authorize the transfer of any blocked property, the entry of any judgment or order that effects a transfer of blocked property, or the execution of any judgment against blocked property.

**(b)** Nothing in this License authorizes the receipt of payment of fees or reimbursement of expenses in connection with services other than those delineated in **Section I** above.

**SECTION IV - REPORTING REQUIREMENTS: (a)** The Licensees are subject to the recordkeeping and reporting requirements of, inter alia, 31 C.F.R. 501.601 and 501.602, including the requirement to maintain records concerning the transactions undertaken pursuant to this License for a period of five years.

**(b)** In the event of litigation or similar proceedings, it is a condition of this License that the Licensees submit copies of all pleadings, motions, memoranda, exhibits, stipulations, correspondence, and proposed orders or judgments (including any proposed final judgment or default judgment) submitted to the court or decision-making body, and of all orders, decisions, opinions, or memoranda issued by the court or decision-making body, to: Chief Counsel's Office, Office of Foreign Assets Control, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Annex, Washington, D.C. 20220, within ten days of filing, submission, or issuance.

**(c)** In the event of litigation or similar proceedings, it is a further condition of this License that the Licensees report by immediate telephone call or facsimile transmission to the Chief Counsel's Office, Office of Foreign Assets Control (tel: 202/622-2410; fax: 202/622-1911), the scheduling of any hearing or status conference in legal proceedings whenever it appears that a court or decision-making body may issue an order or judgment or default judgment or is considering or may decide any pending motion dispositive of the merits of an action or of any claim raised in an action.

**SECTION V - FILING REQUIREMENT:** In the event of litigation or other legal proceedings, it is a further condition of this License that a copy of this License be submitted to the relevant court or any other decision-making body or forum.                    ####